**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CLINTON ENGRAM, JANE DOE, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs | ) ) |
| v. | ) Civil Action No. 1:19-cv-02886-ERK-PK ) |
| GSK CONSUMER HEALTHCARE HOLDINGS (US) INC. | ) ) ) |
| Defendant. | ) ) ) |

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

BACKGROUND ......................................................................................................2

ARGUMENT ..........................................................................................................6

I.  ALL OF MR. ENGRAM'S CLAIMS FAIL BECAUSE HE DOES NOT
    PLAUSIBLY ALLEGE THAT HE WAS MISLED. .......................................7

    A.  Plaintiff Fails To Allege Any Misrepresentation....................................7

    B.  Plaintiff Fails To Adequately Allege Causation Or Reliance ...............11

II. MR. ENGRAM'S CLAIMS FAIL FOR A VARIETY OF OTHER REASONS.............14

    A.  Mr. Engram Lacks Standing To Sue For Injunctive Relief Under New
        York's Consumer Protection Laws........................................................14

    B.  Mr. Engram's Claim For Negligent Misrepresentation Fails For Lack Of A
        "Special Relationship" With Defendant. ..............................................15

    C.  Mr. Engram's Claims For Breach Of Warranty Fail For Multiple Reasons.........16

    D.  Mr. Engram's Claim For Unjust Enrichment Is Duplicative Of His Other
        Substantive Causes Of Action ..............................................................18

III. THE JOHN AND JANE DOES' CLAIMS FAIL AS A MATTER OF LAW.................19

CONCLUSION.....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### FEDERAL CASES

*In re 100% Grated Parmesan Cheese Marketing & Sales Practices Litigation*,
    275 F. Supp. 3d 910 (N.D. Ill. 2017) .......................................................................... 9, 10

*Alce v. Wise Foods, Inc.*,
    No. 17 Civ. 2402 (NRB), 2018 U.S. Dist. LEXIS 54009
    (S.D.N.Y. Mar. 27, 2018) .................................................................. 6, 15, 18, 19

*Annuity, Pension, Welfare & Training Funds of International Union Operating Engineers*
    *Local 14-14B, AFL-CIO v. Angel Construction Group, LLC*,
    No. 08-CV-4760 (SJ) (JO), 2009 WL 6047130 (E.D.N.Y. Sept. 8, 2009) ...................... 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 6, 13

*Barron Partners, LP v. LAB123, Inc.*,
    593 F. Supp. 2d 667 (S.D.N.Y. 2009) ............................................................... 15

*Barth v. Kaye*,
    178 F.R.D. 371 (N.D.N.Y. 1998) .................................................................... 19

*Berger v. Mazda Motor of America, Inc.*,
    No. 16-CV-1835 (MKB) (CLP), 2019 WL 1428449 (E.D.N.Y. Mar. 30, 2019) ............. 12

*Bober v. Glaxo Wellcome PLC*,
    246 F.3d 934 (7th Cir. 2001) ........................................................................... 9

*Bowring v. Sapporo U.S.A., Inc.*,
    234 F. Supp. 3d 386 (E.D.N.Y. 2017) ............................................................. 10

*CAC Group, Inc. v. Maxim Group, LLC*,
    No. 12 Civ. 5901 (KBF), 2012 U.S. Dist. LEXIS 148062
    (S.D.N.Y. Oct. 10, 2012) ............................................................................... 14

*Citizens for a Strong Ohio v. Marsh*,
    123 F. App'x 630 (6th Cir. 2005) .................................................................... 19

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ........................................................................................ 14

*Doe v. Del Rio*,
    241 F.R.D. 154 (S.D.N.Y. 2006) ............................................................... 19

*Fermin v. Pfizer Inc.*,
    215 F. Supp. 3d 209 (E.D.N.Y. 2016) ...................................................... 7, 10

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ....................................................................... 7

*Gurvey v. Cowan, Liebowitz & Latman, P.C.*,
    No. 06 Civ. 1202(LGS)(HBP), 2013 WL 3718071 (S.D.N.Y. July 15, 2013) ................ 14

*Healthcare Financial Group, Inc. v. Bank Leumi USA*,
    669 F. Supp. 2d 344 (S.D.N.Y. 2009) .......................................................... 14

*Hemy v. Perdue Farms, Inc.*,
    No. 11-888 (FLW), 2011 WL 6002463 (D.N.J. Nov. 30, 2011) .................................. 12

*Kuenzig v. Hormel Foods Corp.*,
    505 F. App'x 937 (11th Cir. 2013) .............................................................. 10

*Kuenzig v. Kraft Foods, Inc.*,
    No. 8:11-cv-838-T-24 TGW, 2011 U.S. Dist. LEXIS 102746
    (M.D. Fla. Sept. 12, 2011) ...................................................................... 10

*Kwan v. SanMedica International, LLC*,
    No. 14-cv-03287-MEJ, 2014 WL 5494681 (N.D. Cal. Oct. 30, 2014) ........................... 9

*National Commodity & Barter Association v. Gibbs*,
    886 F.2d 1240 (10th Cir. 1989) ................................................................. 20

*Nealy v. United States Surgical Corp.*,
    587 F. Supp. 2d 579 (S.D.N.Y. 2008) .......................................................... 11

*Nelson v. MillerCoors, LLC*,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) ..................................................... 7, 9, 11, 12

*Network Enterprises, Inc. v. Reality Racing, Inc.*,
    No. 09 Civ. 4664(RJS), 2010 WL 3529237 (S.D.N.Y. Aug. 24, 2010) ......................... 12

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ..................................................................... 15

*Oden v. Boston Scientific Corp.*,
    330 F. Supp. 3d 877 (E.D.N.Y. 2018) ...................................................... 13, 16

*Prue v. Fiber Composites, LLC*,
    No. 11-CV-3304 (ERK)(LB), 2012 WL 1314114
    (E.D.N.Y. Apr. 17, 2012).................................................................... 6, 7, 8, 17

*Rapcinsky v. Skinnygirl Cocktails, L.L.C.*,
    No. 11 Civ. 6546 (JPO), 2013 U.S. Dist. LEXIS 5635 (S.D.N.Y. Jan. 9, 2013)............. 12

*Reed v. Pfizer, Inc.*,
    839 F. Supp. 2d 571 (E.D.N.Y. 2012) ............................................................. 7

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004)....................................................................... 14

*Solak v. Hain Celestial Group, Inc.*,
    No. 3:17-CV-0704 (LEK/DEP), 2018 WL 1870474
    (N.D.N.Y. Apr. 17, 2018) ....................................................................... 9, 10

*Tomasino v. Estee Lauder Cos.*,
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) ...................................................... 12, 14, 16, 17

*In re Toshiba America HD DVD Marketing & Sales Practices Litigation*,
    No. 08-939 (DRD), 2009 U.S. Dist. LEXIS 82833 (D.N.J. Sept. 10, 2009) .................. 13

*Tuosto v. Philip Morris USA Inc.*,
    No. 05 Civ. 9384(PKL), 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) ................... 15, 16

*Tyman v. Pfizer, Inc.*,
    No. 16-CV-06941 (LTS) (BCM), 2017 U.S. Dist. LEXIS 212879
    (S.D.N.Y. Dec. 27, 2017)....................................................................... 17, 18

*Wheeler v. City of Santa Clara*,
    894 F.3d 1046 (9th Cir. 2018) ..................................................................... 20

*Workman v. Plum Inc.*,
    141 F. Supp. 3d 1032 (N.D. Cal. 2015) ........................................................... 10

## STATE CASES

*Corsello v. Verizon New York, Inc.*,
    18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012).......................................... 18

*Private One of NY, LLC v. Golden Touch Transporation, Inc.*,
    31 Misc. 3d 1221(A), 930 N.Y.S.2d 176, 2011 WL 1674845
    (Sup. Ct. 2011) ................................................................................... 11

## STATE STATUTES

N.Y. Gen. Bus. Law § 349 ................................................................................................. 7

N.Y. Gen. Bus. Law § 350 ................................................................................................. 7

N.Y. U.C.C. Law § 2-313(1)(a) ......................................................................................... 7

N.Y. U.C.C. Law § 2-607(3)(a) ....................................................................................... 16

## FEDERAL RULE

Fed. R. Civ. P. 10(a) ........................................................................................................ 19

ChapStick® Moisturizer lip balm ("ChapStick Moisturizer") serves two separate functions: it moisturizes the skin of the lips, and it protects lips from solar radiation.[1]  As such, its packaging indicates the length of time for which it lubricates and moisturizes, expressed in hours, and the strength of ultraviolet ("UV") protection it provides, expressed in sun protection factor ("SPF").  The sole plaintiff in this case, Clinton Engram, contends that including these two distinct pieces of information, unsurprisingly in close proximity to each other given the small size of lip balm packaging, can somehow mislead a reasonable consumer into believing ChapStick Moisturizer does the impossible:  protect users from the sun for eight hours.  Mr. Engram so alleges even though the eight hours mentioned on the package are clearly qualified by the word "MOISTURE" (written in all capital letters), and even though the actual length of sun protection (two hours) is also clearly stated elsewhere on the package.

Plaintiff's Complaint should be dismissed in its entirety for a host of reasons.

***First***, Mr. Engram's claims fail as a matter of law.  Plaintiff's theory of misrepresentation is predicated on the core allegation that the front of the ChapStick Moisturizer packaging somehow promises consumers that the product will protect them from the sun for ***an entire day*** because the statement "SPF 15" appears in close proximity to the entirely separate statement "8 HOUR MOISTURE."  As the very photographs included in the Complaint make clear, however, the label does not remotely make such a promise; indeed, any supposed expectation that the "SPF 15" protection lasts for eight hours is expressly negated by the packaging itself, which instructs consumers to "reapply at least every 2 hours."

---

[1]      As of August 1, 2019, Pfizer Inc. and GlaxoSmithKline entered into a joint venture to combine the companies' respective over-the-counter consumer healthcare businesses.  Accordingly, the newly-formed entity created by the joint venture, GSK Consumer Healthcare Holdings (US) Inc. ("GSK Consumer Holdings"), is now the proper party in interest.  By order dated September 6, 2019, Magistrate Judge Peggy Kuo granted plaintiff's motion for joinder (ECF 8 and 9) and the removal of "Wyeth Consumer Healthcare LLC" as a defendant, and replaced that entity with GSK Consumer Healthcare Holdings (US) Inc.

***Second***, Mr. Engram does not plead that he ***himself*** was misled, let alone that such a purported misrepresentation induced ***him*** to purchase ChapStick Moisturizer. Accordingly, his claims separately fail for lack of causation and/or reliance.

***Third***, several of plaintiff's causes of action fail for claim-specific reasons: (1) Mr. Engram lacks standing to sue for injunctive relief under New York's consumer protection statute because he does not plausibly allege a likelihood of future injury – i.e., that he will actually purchase ChapStick Moisturizer in the future in light of the alleged deceptive conduct; (2) Mr. Engram's claim for negligent misrepresentation separately fails because he does not – and cannot – allege the existence of a "special relationship" with defendant; (3) Mr. Engram's express and implied warranty claims cannot proceed because he does not allege that he notified the defendant of any alleged breach and his implied warranty claim separately fails because the Complaint does not allege privity with the defendant; and (4) Mr. Engram's claim for unjust enrichment is duplicative of his substantive causes of action.

***Finally***, the claims by the so-called Doe plaintiffs must be dismissed because such "placeholder" plaintiffs do not have standing to sue in federal court, and anonymous filings contravene the Federal Rules of Civil Procedure absent exceptional privacy circumstances.

For all of these reasons, as elaborated in greater detail below, the Court should dismiss the Complaint in its entirety.

## **BACKGROUND**

ChapStick Moisturizer is packaged in a cylindrical tube that contains approximately 0.15 ounces of the product. (*See* Compl. ¶ 3 (indicating net weight of 0.15 oz.).) The tubes are encased in a rectangular cardboard and plastic package somewhat larger than the tube or tubes that it contains. (*See id.* ¶¶ 3-4 (photographs showing packaging).) Like all lip balms, one of its primary purposes is to moisturize the skin of the lips. (*See id.* ¶¶ 1, 3.) To be most effective as a

moisturizer, ChapStick Moisturizer needs to be reapplied at least every eight hours.  Like some, but not all, other lip balms, it also functions as a sunscreen, providing SPF 15 protection from the UV rays that cause sunburn.  To be most effective as a sunscreen, ChapStick Moisturizer needs to be re-applied every two hours.  (*See id*. ¶¶ 4, 5.)

The photographs included in plaintiff's Complaint demonstrate that ChapStick Moisturizer is packaged in a manner that clearly explains its moisturizing property as well as its solar-protective property.







As those photographs illustrate, both the plastic wrapping on the tube itself and the cardboard in which it is encased contain the word "MOISTURIZER" in large letters as well as the list "SKIN PROTECTANT[;] SUNSCREEN."  (All capitalization in original.)  The cardboard package also contains the phrase "2 in 1 Lipcare."  To provide more information about the product's moisturizing capabilities, both the tube and the cardboard packaging contain a blue

semicircle with white lettering that reads "8 HOUR ***MOISTURE***."  (Capitalization original, emphasis added.)  Below, the package also provides further information on the product's sun-protective properties, with a distinct gray and white semicircle that contains blue lettering reading "SPF 15."  Although this portion of the package makes no representation about the length of time that ChapStick Moisturizer provides "SPF 15" sun protection, that information is clearly provided by a panel on the back of the packaging, which directs the user to "apply liberally 15 minutes before sun exposure" and "reapply at least every 2 hours."  (Compl. at 2.)

The Complaint nonetheless alleges that "[t]he representations of '8 hour moisture,' when combined with 'SPF 15,' represent the Products are able to provide 'all-day' or extended wear protection against sun damage, instead of no more than the actual two hours indicated as time between applications."  (*Id.* ¶ 5.)  The Complaint also alleges that the "[t]he Products contain ***other*** representations which are misleading and deceptive," although it does not identify those supposed misstatements.  (*Id.* ¶ 15 (emphasis added).)  Similarly, while the Complaint vaguely alleges that Mr. Engram "saw and relied on the misleading representations" and "purchased one or more" tubes of ChapStick Moisturizer in New York (*id.* ¶¶ 28-29), it does not specify whether those "representations" are the so-called "all-day" sun-protection promise (*id.* ¶ 5) or the unidentified "other representations" (*id.* ¶ 15).

Plaintiff (or, more accurately, plaintiff's counsel) also makes a series of allegations on behalf of "John and Jane Doe plaintiffs."  The Doe plaintiffs are hypothetical, "placeholder" individuals whom counsel speculates "have been affected by the conduct alleged."  (*Id.* ¶¶ 24, 26.)

Plaintiff's counsel seeks certification of a nationwide class, a California class and a New York class alleging violations of statutory consumer protection provisions, and common law

negligent misrepresentation, fraud, unjust enrichment, and breach of express and implied warranties.[2]

## **ARGUMENT**

"The standards of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim and under Rule 12(b)(1) for lack of subject matter jurisdiction 'are substantively identical,' although the movant bears the burden of proof on a 12(b)(6) motion and the party invoking the court's jurisdiction bears the burden on a 12(b)(1) motion." *Alce v. Wise Foods, Inc.*, No. 17 Civ. 2402 (NRB), 2018 U.S. Dist. LEXIS 54009, at *6 (S.D.N.Y. Mar. 27, 2018) (citations omitted). "To survive a motion to dismiss under [Rule] 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Prue v. Fiber Composites, LLC*, No. 11-CV-3304 (ERK)(LB), 2012 WL 1314114, at *3 (E.D.N.Y. Apr. 17, 2012) (Korman, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Rather, a claim only "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* By contrast, "legal conclusion[s] couched as . . . factual allegation[s]" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.* at 678-79 (citation omitted). The Complaint in this case must be dismissed under this standard for several reasons.

---

[2]       The Complaint specifically asserts that "[t]he classes will consist of all consumers in the following states: *all*, New York, California, who purchased any Products containing the actionable representations during the statutes of limitation." (Compl. ¶ 31 (emphasis added).) GSK Consumer Holdings construes this sentence as requesting certification of a nationwide class.

I.      **ALL OF MR. ENGRAM'S CLAIMS FAIL BECAUSE HE DOES NOT
        PLAUSIBLY ALLEGE THAT HE WAS MISLED.**

        A.      **Plaintiff Fails To Allege Any Misrepresentation.**

        Plaintiff has not plausibly alleged a fundamental element of all of his causes of action:

deception.  *See, e.g.*, N.Y. Gen. Bus. Law §§ 349, 350 (prohibiting "[d]eceptive acts or

practices" and "[f]alse advertising"); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 675,

678-79 (E.D.N.Y. 2017) (dismissing New York General Business Law ("GBL"), negligent

misrepresentation, fraud, express warranty, and unjust enrichment claims because label at issue

"did not misrepresent" anything); *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 578-79 (E.D.N.Y.

2012) (claim for breach of express warranty requires "affirmation of fact or promise made by the

seller" that turns out to be "breached," i.e., not delivered upon, and must be dismissed because

"what [the] defendant[] promised was different than what [it] provided") (quoting N.Y. U.C.C.

Law § 2-313(1)(a)); 839 F. Supp. 2d at 579 (dismissing implied warranty claim "[f]or largely the

same reasons").

        Under New York law, an allegedly "deceptive practice must be 'likely to mislead a

***reasonable*** consumer acting ***reasonably*** under the circumstances.'"  *Prue*, 2012 WL 1314114, at

*7 (emphases added) (citations omitted).  "[I]n determining whether a reasonable consumer

would have been misled by a particular [representation], context is crucial."  *Fink v. Time

Warner Cable*, 714 F.3d 739, 741-42 (2d Cir. 2013) (per curiam).  Importantly, "[i]t is well

settled that a court may determine as a matter of law that an allegedly deceptive practice would

not have misled a reasonable consumer."  *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211

(E.D.N.Y. 2016).

        Mr. Engram's theory of misrepresentation fails on the pleadings under these standards.

The Complaint alleges that "[t]he representations of '8 hour moisture,' when combined with

'SPF 15,' [mis]represent the Products are able to provide 'all-day' or extended wear protection against sun damage."  (Compl. ¶ 5.)[3]  But this theory is implausible – and subject to dismissal – for two separate reasons.  ***First***, the front of the package – the portion with which plaintiff takes issue – clearly and unambiguously states that ChapStick Moisturizer provides eight hours of **MOISTURE**, a representation that plaintiff does not allege is false or deceptive.  Although plaintiff asserts that "[t]he emphasis on '8 Hour Moisture' combined with 'SPF 15'" on the front of the packaging "causes consumers to expect the Product provides extended wear protection (8 hours) from the sun" (Compl. ¶ 4), the photographs depicted in the Complaint themselves plainly demonstrate that the front of the packaging makes ***no*** representation whatsoever about the duration of the SPF 15 ***sun*** protection, an entirely different function of the ChapStick Moisturizer:





---

<sub>3</sub>
[3]     The Complaint alleges that "[t]he Products contain other representations which are misleading and deceptive."  (Compl. ¶ 15.)  However, the Complaint does not identify these supposed ***other*** statements – much less specify how they are supposedly misleading and deceptive; hence, any claims based on them cannot proceed.  *See Prue*, 2012 WL 1314114, at *8 ("The plaintiffs fail to allege, however, what exactly these misrepresentations and false statements were, nor do they even hint at how they were materially misleading or deceptive.").

(*See* Compl. at 2.)  In truth, those photographs portray two separate representations, each of which is highlighted in a different color and contained within a distinctly colored semicircle. Specifically, the "8 Hour Moisture" statement is in white lettering and is included in a blue semicircle, while the "SPF 15" representation is in blue lettering and is located in a gray and white semicircle.  Thus, "[n]one of the statements" on the product labeling "expressly make[]" the claim on which Mr. Engram's theory of misrepresentation is based – i.e., that the product can provide eight hours of sun protection.  This alone requires dismissal of his claims.  *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (affirming dismissal of consumer fraud claim under Illinois law where "[n]one of the statements" on the product labeling "expressly ma[de]" the claim underlying plaintiff's allegations and where the statement that was made on the labeling was "completely true").[4]

**Second**, even if the meaning of the SPF 15 representation were remotely ambiguous, any supposed confusion would be negated by the explicit and straightforward directions on the back of the packaging indicating that a single application provides "2 hours" of SPF 15 sun protection. (Compl. at 2.)  Indeed, court after court has dismissed claims based on allegedly deceptive product labeling where – as here – a plaintiff's alleged subjective impression about a product supposedly generated by one aspect of the product's packaging is expressly negated by explicit disclosures elsewhere on the product.  *See, e.g.*, *Nelson*, 246 F. Supp. 3d at 676 (dismissing New

---

[4]        *See also, e.g.*, *Solak v. Hain Celestial Grp., Inc.*, No. 3:17-CV-0704 (LEK/DEP), 2018 WL 1870474, at *4-5 (N.D.N.Y. Apr. 17, 2018) (dismissing GBL §§ 349 and 350 claims; "prominently display[ing] pictures of *whole* tomatoes, spinach, and potatoes" on the front of the packaging "is not a misrepresentation" because "it in no way asserts that consumers will *actually* find whole, ripe, garden grown potatoes, tomatoes, or spinach hidden among the Straws") (citation omitted); *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 926 (N.D. Ill. 2017) (interpreting, *inter alia*, New York law) (dismissing GBL claims, express and implied warranty claims, and unjust enrichment claims for lack of any objective misrepresentation because "the labels here make no promise that the product consists of cheese only"); *Kwan v. SanMedica Int'l, LLC*, No. 14-cv-03287-MEJ, 2014 WL 5494681, at *3 (N.D. Cal. Oct. 30, 2014) (dismissing consumer protection claims under California law because the advertising in question "does not state that the product was clinically tested to produce 'youthful skin integrity, lean musculature, elevated energy production, [and] adipose tissue distribution'") (citation omitted).

York consumer protection claims because "the images of a kangaroo and a constellation 'and allusion to the company's historic roots in [Australia] are eclipsed by the accurate disclosure statement'" that the beer was brewed in the United States) (citation omitted); *Kuenzig v. Kraft Foods, Inc.*, No. 8:11-cv-838-T-24 TGW, 2011 U.S. Dist. LEXIS 102746, at *26-27 (M.D. Fla. Sept. 12, 2011), *aff'd sub nom. Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937, 938-89 (11th Cir. 2013) (per curiam) (affirming dismissal of fraud, warranty and other claims arising out of close proximity of statement "98% Fat Free" to "50 calories per serving" because it is "disingenuous at best" to plead that consumers will "forgo simply turning the package over to determine the amount of fat calories in the product").[5]  As one court explained, "[e]very reasonable shopper knows that *the devil is in the details*" such that he or she cannot be deceived as a matter of law with regard to a product's attributes where "any potential ambiguity could be resolved by the back panel of the products."  *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (emphasis added) (dismissing claims because "a reasonable consumer would simply not view pictures on" product packaging "and assume that the size of the items pictured directly correlated with their predominance in the blend," where the back panel "listed all ingredients in order of predominance"); *see also In re 100% Grated Parmesan*, 275 F. Supp. 3d at 922 ("[C]onsumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight . . . .").

---

[5]     *See also, e.g., Solak*, 2018 WL 1870474, at *5 (dismissing New York consumer protection claims because "'any potential ambiguity' that might arise about the [p]roduct's vegetable content as a result of the challenged picture 'could be resolved by the back panel of the products, which list[s] all ingredients in order of predominance'") (citation omitted); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 391 (E.D.N.Y. 2017) (dismissing GBL §§ 349 and 350 claims and common law claims for negligent misrepresentation, fraud and unjust enrichment because "[t]he use of a trademarked star symbol and allusion to the company's historic roots in Japan" on beer labeling and other marketing "are eclipsed by the accurate disclosure statement" that the beer was imported from Wisconsin, USA or Ontario, Canada on its labels); *Fermin*, 215 F. Supp. 3d at 212 (dismissing claims for consumer fraud, negligent misrepresentation and unjust enrichment under New York law based on the alleged size of the packaging because "the labels plainly negate any supposed 'reliance' on the size of the packaging" such that no reasonable consumer could have been misled as a matter of law).

The same logic dooms plaintiff's claim of misrepresentation here.  Although the front portion of the ChapStick Moisturizer package makes no representation about the length of time the product provides "SPF 15" sun protection, that information is clearly provided by a panel on the back of the cardboard packaging, which directs the user to "apply liberally 15 minutes before sun exposure" and "reapply at least every 2 hours."  (Compl. at 2.)  Further, these straightforward "**Directions**" are underscored by the additional warning that "[s]pending time in the sun increases your risk of skin cancer and early skin aging," and that consumers should "limit[] time in the sun, *especially from 10 a.m. – 2 p.m.*"  (*Id.* (emphasis added).)  Thus, any supposed ambiguity over the duration of the SPF protection is clarified by the explicit and multiple disclosures described above.

In short, "[t]he idea that consumers purchase products based on certain of a label's statements or images . . . but are blind to others . . . in close proximity on that label strains credibility."  *Nelson*, 246 F. Supp. 3d at 674.  For this reason, too, plaintiff has failed to adequately allege deception, and his claims should be dismissed by the Court.

### B.  Plaintiff Fails To Adequately Allege Causation Or Reliance.

Even if plaintiff had plausibly alleged a deceptive practice (and he has not), plaintiff's claims would still fail for the additional reason that he does not adequately allege causation and/or reliance – fundamental elements of each of the claims at issue.

As courts have recognized, "[t]he causation element [of GBL § 349] is essential:  'The plaintiff . . . must show that the defendant's "material deceptive act" caused the injury.'"  *Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008) (citations omitted).[6]  The same

---

[6]     The causation requirement extends to requests for injunctive relief under GBL § 349 as well.  *See Private One of NY, LLC v. Golden Touch Transp., Inc.*, 31 Misc. 3d 1221(A), 930 N.Y.S.2d 176, 2011 WL 1674845, at *11 (Sup. Ct. 2011) (dismissing plaintiff's claim for injunctive relief under GBL § 349 where plaintiff could not show

*(cont'd)*

is true with respect to plaintiff's common law claims for breach of implied warranty and unjust enrichment.  *See Network Enters., Inc. v. Reality Racing, Inc*., No. 09 Civ. 4664(RJS), 2010 WL 3529237, at *7 (S.D.N.Y. Aug. 24, 2010) ("To plead a plausible claim to relief on a theory of unjust enrichment [under New York law], plaintiffs must show a causal 'nexus' between a defendant's enrichment and their own expense that goes beyond mere 'correlation.'") (citation omitted); *Berger v. Mazda Motor of Am., Inc.*, No. 16-CV-1835 (MKB) (CLP), 2019 WL 1428449, at *8 (E.D.N.Y. Mar. 30, 2019) ("To 'succeed on an implied warranty claim, the plaintiff "must show . . . that the breach was the proximate cause of [the] plaintiff's damages."'") (citations omitted).  Plaintiff's remaining claims require allegations of reliance.  *See, e.g.*, *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 257 (E.D.N.Y. 2014) (Korman, J.) ("A claim of false advertising under Section 350 must meet all of the same elements as a claim under Section 349, and the plaintiff must further demonstrate proof of actual reliance.") (citation omitted); *Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, No. 11 Civ. 6546 (JPO), 2013 U.S. Dist. LEXIS 5635, at *22 (S.D.N.Y. Jan. 9, 2013) ("[E]xpress warranty claims in [New York] require some showing of reliance on the part of a plaintiff."); *Nelson*, 246 F. Supp. 3d at 678 (noting that "justifiable reliance" is a required element of claims for both negligent misrepresentation and fraud) (citation omitted).

　　　　Plaintiff's claims fail for lack of causation/reliance because the Complaint is devoid of any allegations tying any supposed deceptive act to Mr. Engram's actual purchase of any ChapStick Moisturizer.  *See Hemy v. Perdue Farms, Inc.*, No. 11-888 (FLW), 2011 WL 6002463, at *16 (D.N.J. Nov. 30, 2011) (rejecting "conclusory" allegation that plaintiffs

_____

*(cont'd from previous page)*

that it had been injured "***by reason of*** any violation of" the statute, as the injury at issue would exist even if defendant were to cease providing the allegedly deceptive services) (emphasis added).

"purchased . . . chicken products 'based upon the representations that the . . . chicken was "Humanely Raised"'"; plaintiffs were required to include "supporting facts" in support of their allegation and "expressly allege" that the specific ***plaintiffs themselves*** interpreted the alleged misstatement in the manner specified in the complaint) (citation omitted).  Although the Complaint alleges that "[t]he emphasis on '8 Hour Moisture' combined with 'SPF 15' causes consumers to expect the Product provides extended wear protection (8 hours) from the sun," (Compl. ¶ 4), the Complaint does not actually plead that Mr. Engram ***himself*** had such an expectation – much less that it caused him to purchase ChapStick Moisturizer.  Rather, the Complaint vaguely alleges that "Plaintiff paid [a] premium because prior to purchase, plaintiff saw and relied on the misleading representations."  (*Id.* ¶ 29.)  Such conclusory allegations do not suffice under the applicable pleading standard.  *See, e.g.*, *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief); *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018) (dismissing New York consumer protection claims for lack of causation because "[a]lthough [p]laintiff sets forth certain statements contained on [d]efendant's website and in its product brochure these allegations neither explicitly state nor permit the plausible inference that [p]laintiff actually saw these statements prior to making the determination . . . to purchase the Greenfield Filter") (citation omitted).[7]

---

[7]     *See also, e.g.*, *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, No. 08-939 (DRD), 2009 U.S. Dist. LEXIS 82833, at *40 (D.N.J. Sept. 10, 2009) (plaintiffs did not adequately plead causation under either Rule 8 or Rule 9(b) because they "fail[ed] to allege when [the defendant] made its alleged misrepresentations and when, if ever, the [p]laintiffs were exposed to those misrepresentations"); *Oden*, 330 F. Supp. 3d at 895 (dismissing express warranty claim based on purported misrepresentations because "the [c]omplaint merely alleges [p]laintiff's purported 'reliance' without providing any underlying factual details concerning when, where and how such reliance arose").

For this reason, too, Mr. Engram's claims should be dismissed on the pleadings.[8]

## II. MR. ENGRAM'S CLAIMS FAIL FOR A VARIETY OF OTHER REASONS.

Plaintiff's claims also fail for a variety of other reasons.  Specifically:  (1) Mr. Engram lacks standing to sue for injunctive relief under New York's consumer protection laws; (2) his claim for negligent misrepresentation fails for lack of a "special relationship" with defendant; (3) his warranty claims fail for lack of notice and/or privity; and (4) his claim for unjust enrichment inappropriately duplicates his substantive causes of action.

### A. Mr. Engram Lacks Standing To Sue For Injunctive Relief Under New York's Consumer Protection Laws.

"In order to meet the constitutional minimum of standing to seek injunctive relief, [a plaintiff] must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'"  *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 101-02 (1983)).  As this Court has recognized, a plaintiff lacks standing to sue for injunctive relief under New York's consumer protection laws where he fails to plausibly allege that he will purchase the products in question in light of the complained-of conduct.  *See Tomasino*, 44 F. Supp. 3d at 255-56 (dismissing claims for injunctive relief for lack of standing because "[w]hile Tomasino suggests that she remains a potential Estee Lauder customer and is likely to be misled again, she

---

[8]         Plaintiff's conclusory allegation of reliance is all the more deficient under the heightened pleading requirement of Rule 9(b), which governs his claims for fraud and negligent misrepresentation.  *See, e.g.*, *CAC Grp., Inc. v. Maxim Grp., LLC*, No. 12 Civ. 5901 (KBF), 2012 U.S. Dist. LEXIS 148062, at *15 (S.D.N.Y. Oct. 10, 2012) (negligent misrepresentation under New York law must be pled with particularity under Rule 9(b)), *aff'd*, 523 F. App'x 802 (2d Cir. 2013); *Healthcare Fin. Grp., Inc. v. Bank Leumi USA*, 669 F. Supp. 2d 344, 348 (S.D.N.Y. 2009) (same with respect to common law fraud ).  To comport with this standard, a plaintiff must specify the "who, what, when, where and why" of the purportedly fraudulent conduct.  *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, No. 06 Civ. 1202(LGS)(HBP), 2013 WL 3718071, at *9 (S.D.N.Y. July 15, 2013) (citation omitted).  Plaintiff has not done so here.  Although the Complaint vaguely alleges that "plaintiffs purchased one or more Products for personal use and application with the representations described herein" (Compl. ¶ 28), it does not provide *when* Mr. Engram actually purchased ChapStick Moisturizer.  Nor does the Complaint allege *where* Mr. Engram purchased it.

has not alleged a sufficient future injury to establish standing") (citation omitted); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (plaintiff lacked standing to seek injunctive relief in putative class action brought under federal law and state consumer protection statutes because he "has failed to allege that he intends to use Amazon in the future to buy *any* products, let alone food or drug products generally or weight loss products in particular").

Here, Mr. Engram alleges that he "would ***consider*** purchasing the Products again if there were ***assurances*** that the Products' representations were no longer misleading." (Compl. ¶ 30 (emphases added).)  The only fair construction of this allegation is that he will "not purchase [ChapStick Moisturizer] unless defendant changes" its practices, "in which event he will not be injured at all."  *Alce*, 2018 U.S. Dist. LEXIS 54009, at *17 (dismissing claim for injunctive relief under GBL § 349 for lack of standing notwithstanding allegation that plaintiff would purchase the product if the defendant modified the price because "this condition . . . mean[s] that [plaintiff] will not purchase [p]roducts unless defendant changes the price of the [p]roducts, in which event he will not be injured at all").  As a result, plaintiff's claim for injunctive relief under New York's consumer protection statutes should be dismissed for this reason as well.

## B. Mr. Engram's Claim For Negligent Misrepresentation Fails For Lack Of A "Special Relationship" With Defendant.

"[U]nder New York law, a plaintiff may not recover for negligent misrepresentation in the absence of a special relationship of trust or confidence between the parties."  *Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 674 (S.D.N.Y. 2009) (citation omitted).  "Generally, an arms-length commercial transaction, without more, does not give rise to a special duty," even where there is an allegation that the seller failed to disclose information to the buyer. *Tuosto v. Philip Morris USA Inc.*, No. 05 Civ. 9384(PKL), 2007 WL 2398507, at *15 (S.D.N.Y. Aug. 21, 2007).  Accordingly, courts regularly dismiss claims for negligent misrepresentation

15

absent some plausible allegation of a fiduciary or other relationship of confidence between the parties. *See, e.g.*, *id.* at *14-15 (dismissing claim for negligent misrepresentation because tobacco company's allegedly deceptive marketing of cigarettes purchased by the plaintiff did not give rise to a "special relationship"); *Oden*, 330 F. Supp. 3d at 901 (dismissing claim for negligent misrepresentation against manufacturer of allegedly defective Inferior Vena Cava filter because, *inter alia*, "[p]laintiff has not adequately pleaded that a duty existed as a result of a special relationship between [himself] and [d]efendants").

Here, Mr. Engram does not allege any facts suggesting that he was in a fiduciary or other close relationship of trust with the defendant.  In fact, Mr. Engram does not allege that he has any direct relationship with either entity at all.  Accordingly, he has not adequately alleged the existence of a "special relationship" capable of giving rise to a claim for negligent misrepresentation.  For this reason, too, his claim for negligent misrepresentation should be dismissed on the pleadings.

### C.    Mr. Engram's Claims For Breach Of Warranty Fail For Multiple Reasons.

Mr. Engram's claims for breach of warranty additionally fail for lack of notice, and his claim for breach of implied warranty also fails for lack of privity.

***First***, plaintiff's warranty claims fail because Mr. Engram does not allege that he provided defendant with notice of any purported breach of warranty – much less that he did so in a timely manner.  As this Court has recognized, "[t]o assert a breach of warranty claim under New York law, 'the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'" *Tomasino*, 44 F. Supp. 3d at 260 (quoting N.Y. U.C.C. Law § 2-607(3)(a)).  In other words, a plaintiff must not only allege that he notified the seller of the supposed breach, but also sufficiently allege that he did so "within a reasonable time after" discovery of a breach.  *Id.* at 260, 262 (citation omitted)

(dismissing express and implied warranty claims "for failure to provide notice of the alleged breaches to the defendants within a reasonable time"); *see also Tyman v. Pfizer, Inc*., No. 16-CV-06941 (LTS) (BCM), 2017 U.S. Dist. LEXIS 212879, at *60 (S.D.N.Y. Dec. 27, 2017) ("Since plaintiffs fail[] to allege any facts that would permit the [c]ourt to conclude that they notified Pfizer of the alleged breaches within a reasonable time after discovering them, they are 'barred from any remedy.'") (citation omitted), *report and recommendation adopted by* 2018 U.S. Dist. LEXIS 8222 (S.D.N.Y. Jan. 18, 2018).

Mr. Engram has done neither.  The Complaint does not allege that he notified defendant of the alleged breach of warranty at all, much less that he did so within a reasonable time after he discovered it.  For this reason as well, plaintiff's claims for breach of warranty are inadequately pled, providing further grounds for their dismissal.

*Second*, Mr. Engram's claim for breach of implied warranty separately fails for lack of privity of contract.  As this Court explained in *Prue*, "[o]nly when a plaintiff alleges personal injury resulting from the breach of implied warranty is the privity requirement lifted."  2012 WL 1314114, at *10.  Thus, "[a]lthough a direct buyer-seller relationship is sufficient to establish privity," *id.* at *11, this Court dismissed the claim for breach of implied warranty in *Prue* because the plaintiffs had failed to allege such a relationship.  *Id.*  As the Court explained, "The plaintiffs d[id] not allege, for example, that they purchased the decking materials [in question] directly from" the defendant.  *Id.*; *see also Tomasino*, 44 F. Supp. 3d at 262 (dismissing implied warranty claim because the "plaintiff does not allege that she purchased the products from Estee Lauder or that she suffered personal injury").

This case calls for the same result.  Although the Complaint alleges that "[t]he Products are sold to consumers from third-party retailers, including brick-and-mortar stores and online,

and directly from defendant's website" (Compl. ¶ 2), it does not allege whether Mr. Engram

purchased his ChapStick Moisturizer from those third-party retailers (in which case he would not

have a privity relationship with defendant here) or directly from defendant's website (in which

case he would).  For this reason, too, his claim for breach of implied warranty should be

dismissed.

     **D.**    **Mr. Engram's Claim For Unjust Enrichment Is Duplicative Of His Other
Substantive Causes Of Action.**

     Finally, Mr. Engram's claim for unjust enrichment should also be dismissed because it is

redundant of his other substantive causes of action.  "[U]njust enrichment is not a catchall cause

of action to be used when others fail."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944

N.Y.S.2d 732, 740, 967 N.E.2d 1177, 1185 (2012) (affirming dismissal of unjust enrichment

claim as duplicative of other claims; "It is available only in ***unusual*** situations when, though the

defendant has not breached a contract nor committed a recognized tort, circumstances create an

equitable obligation running from the defendant to the plaintiff.") (emphasis added).  "'Although

a plaintiff "may plead unjust enrichment in the alternative to his other claims,"' the unjust

enrichment claim will not survive a motion to dismiss where the plaintiff '"fail[s] to explain how

[it] is not merely duplicative of [his] other causes of action."'"  *Tyman*, 2017 U.S. Dist. LEXIS

212879, at *54 (dismissing claim for unjust enrichment as duplicative of other claims) (citations

omitted); *see also Alce*, 2018 U.S. Dist. LEXIS 54009, at *30-31 ("These allegations are a mere

regurgitation of those made with respect to plaintiffs' slack-fill claims under the GBL . . . .

Accordingly, . . . they are dismissed as duplicative.").

     Plaintiff has not met this burden.  In support of his unjust enrichment claim, Mr. Engram

merely repeats the allegations of wrongdoing purportedly supportive of his other causes of action

– namely, that "[d]efendant obtained benefits and monies because the Products were not as

represented and expected." (Compl. ¶ 86.) Because this "allegation[] [is] a mere regurgitation of" those made in support of his other causes of action, his claim for unjust enrichment should be "dismissed as duplicative." *Alce*, 2018 U.S. Dist. LEXIS 54009, at \*30-31.

## III.   THE JOHN AND JANE DOES' CLAIMS FAIL AS A MATTER OF LAW.

The claims asserted by the so-called "John and Jane Doe plaintiffs" – who purport to "represent[] the 49 other states where they reside and purchased the Products" (Compl. ¶ 41) – are procedurally infirm and must be dismissed.

In federal courts, parties must identify themselves in their pleadings to commence and maintain an action. *See* Fed. R. Civ. P. 10(a) ("Every pleading must have a caption . . . [, and] [t]he title of the complaint must name all the parties . . . ."). This rule derives from basic notions of fairness and the U.S. Constitution's guarantee of open and public judicial proceedings. *See Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006). It is also rooted in the fundamental requirement of Article III standing – i.e., that a plaintiff must have a personal stake in the outcome of the case or controversy at hand. *See Annuity, Pension, Welfare & Training Funds of Int'l Union Operating Eng'rs Local 14-14B, AFL-CIO v. Angel Constr. Grp., LLC*, No. 08-CV-4760 (SJ)(JO), 2009 WL 6047130, at \*3-4 & n.1 (E.D.N.Y. Sept. 8, 2009) (noting that "[i]n the absence of" "specific actual persons who had authorized" counsel to file a lawsuit, doing so "in the names of 'John and Jane Doe' would raise very troubling issues of Article III standing"), *report and recommendation adopted by* 2010 WL 932337 (E.D.N.Y. Mar. 11, 2010).

Consistent with these principles "[f]ailure to seek permission to proceed under a pseudonym is fatal to an anonymous plaintiff's case[] because . . . 'the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them.'" *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 637 (6th Cir. 2005) (citation omitted); *see also, e.g., Barth v. Kaye*, 178 F.R.D. 371, 376 (N.D.N.Y. 1998) ("If a party wishes to

proceed under a fictitious name he must request the right to do so."); *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) (per curiam) (affirming dismissal of complaint filed by unnamed plaintiffs who "made no request to the district court for permission to proceed anonymously").  Simply put, there is "no authority" for the proposition that "'John Doe,' as [a] yet nonexistent . . . plaintiff[,] can serve as a placeholder for hypothetical proper plaintiffs."  *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1050, 1059 (9th Cir. 2018) (district court properly dismissed complaint for lack of standing where it named as a plaintiff "John Doe 1," described as "the to-be-identified personal representative" of decedent's estate).

Here, the Complaint expressly concedes that the Doe plaintiffs are mere "placeholder[s]," whom plaintiff's counsel has listed in the hopes of attracting additional named plaintiffs from each of the other states and the District of Columbia – a purpose that is clearly improper under well-established law.  As a result, all of the claims asserted on behalf of unnamed John and Jane Doe plaintiffs should also be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety.

Dated:  November 8, 2019

Respectfully submitted,

*Of Counsel (pro hac motions to be filed):*
John H. Beisner
Jessica D. Miller
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Tel: (202) 371-7000
Fax: (202) 393-5760
E-mail:  John.Beisner@skadden.com,
          Jessica.Miller@skadden.com

By: /s/ Thomas E. Fox
     Thomas E. Fox
     SKADDEN, ARPS, SLATE, MEAGHER
     & FLOM LLP
     4 Times Square
     New York, New York 10036
     Tel:  (212) 735-2165
     Fax:  (917) 777-2165
     E-mail:  Thomas.Fox@skadden.com

*Attorneys for Defendant GSK Consumer Healthcare Holdings (US) Inc.*