UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLINTON ENGRAM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GSK CONSUMER HEALTHCARE HOLDINGS (US) INC.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:19-cv-02886-EK-PK<br>)<br>)<br>) Date of Service: September 23, 2020<br>)<br>)<br>) |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| ARGUMENT | | 3 |
| I. | ALL OF MR. ENGRAM'S CLAIMS FAIL BECAUSE HE DOES NOT PLAUSIBLY ALLEGE THAT HE WAS MISLED. | 3 |
| | A. The Front Of The ChapStick Moisturizer Packaging Does Not Represent That It Provides Eight Hours Of SPF Protection. | 3 |
| | B. Any Confusion Regarding The SPF 15 Representation Is Clarified By Multiple Disclosures On The Back Of The Packaging. | 5 |
| | C. Plaintiff's Reliance On The Survey Is Misplaced. | 7 |
| II. | PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS DUPLICATIVE OF HIS CONSUMER PROTECTION CLAIMS. | 9 |
| CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Alce v. Wise Foods, Inc.*,
    No. 17 Civ. 2402 (NRB), 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) ......................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................ 9

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    No. 17-cv-05921-WHO, 2018 WL 3995832 (N.D. Cal. Aug. 21, 2018) ............................ 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................................... 8, 9

*Branca v. Nordstrom, Inc.*,
    No. 14cv2062-MMA (JMA), 2015 WL 10436858 (S.D. Cal. Oct. 9, 2015) ...................... 9

*Cheslow v. Ghirardelli Chocolate Co.*,
    No. 19-cv-07467-PJH, 2020 WL 4039365 (N.D. Cal. July 17, 2020) ............................ 8, 9

*Comfort v. Ricola USA, Inc.*,
    No. 19-CV-06089 CJS, 2019 WL 6050301 (W.D.N.Y. Nov. 14, 2019) ...................... 6, 10

*Doe v. Columbia University*,
    831 F.3d 46 (2d Cir. 2016) ................................................................................................ 10

*Henry v. Daytop Village, Inc.*,
    42 F.3d 89 (2d Cir. 1994) .................................................................................................. 10

*Joseph v. J.M. Smucker Co.*,
    No. CV 17-8735 FMO (KSx), 2019 WL 1219708 (C.D. Cal. Mar. 13, 2019) ................... 9

*Kamath v. Robert Bosch LLC*,
    No. 2:13-cv-08540-CAS(JCGx), 2014 WL 2916570 (C.D. Cal. June 26, 2014) ............... 5

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018) ..................................................................................... 3, 4, 5, 6

*Podpeskar v. Dannon Co.*,
    No. 16-cv-8478 (KBF), 2017 WL 6001845 (S.D.N.Y. Dec. 3, 2017) ................................ 8

*Reyes v. Crystal Farms Refrigerated Distribution Co.*,
    No. 18-CV-2250 (NGG) (RML), 2019 WL 3409883 (E.D.N.Y. July 26, 2019) ............... 6

*Sarr v. BEF Foods, Inc.*,
    No. 18-cv-6409 (ARR) (RLM), 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ................... 6

*Shalikar v. Asahi Beer U.S.A., Inc.*,
    No. CV17-02713 JAK (JPRx), 2017 WL 9362139 (C.D. Cal. 2017) ........................... 8, 9

*Sharpe v. A&W Concentrate Co.*,
    No. 19-cv-768 (BMC), 2020 WL 4931045 (E.D.N.Y. Aug. 23, 2020) ..................... passim

*St. John's University v. Bolton*,
    757 F. Supp. 2d 144 (E.D.N.Y. 2010) ........................................................................... 10

*Warner v. StarKist Co.*,
    No. 1:18-cv-406 (GLS/ATB), 2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019) ................. 10

**STATE CASE**

*Corsello v. Verizon New York, Inc.*,
    18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012) .......................................... 10

**FEDERAL REGULATION**

21 C.F.R. § 201.327(e)(4) ....................................................................................................... 1

Plaintiff's opposition brief seeks to salvage his lawsuit by mischaracterizing the labeling of ChapStick Moisturizer, misapplying the relevant caselaw and pointing to a meaningless survey that says nothing about whether consumers would have been deceived by the Chapstick Moisturizer label. All of these efforts should be rejected by the Court.

***First***, plaintiff relies on cases involving actual ***affirmative misstatements*** – for example, statements that crackers are "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" and bolded claims that soda is "MADE WITH AGED VANILLA" – but he cannot identify a single statement on the ChapStick Moisturizer package remotely representing that the product provides consumers with 8 hours of SPF 15 protection. Instead, he is forced to rely on the ***close proximity*** of the distinct "8 HOUR MOISTURE" statement (which is in white lettering and included in a blue semicircle) to the entirely separate "SPF 15" representation (which is in blue lettering and located in a gray and white semicircle). Absent an affirmative misstatement, plaintiff's cases are inapposite and only reaffirm why his claims should be dismissed.

***Second***, even assuming that the front of the ChapStick Moisturizer labeling were ambiguous, the back of the packaging expressly directs that ChapStick Moisturizer must be reapplied at least every "2 hours" if it is being used for sun protection. Plaintiff initially asserts that not ***all*** ChapStick Moisturizer that was sold during the class period came in blister packaging, but plaintiff does not claim that ***he*** purchased a loose tube of ChapStick, which is the relevant question on a motion to dismiss. To the contrary, he provided photographs of the blister packaging in his original complaint, strongly suggesting that he purchased the ChapStick in that form of packaging.[1] Plaintiff also argues that the "2 hour[]" directions cannot defeat his claim of

---

[1] In any event, whether contained in a blister pack or not, ChapStick Moisturizer has always been accompanied by "Directions" instructing consumers to "reapply at least every 2 hours" for sunscreen protection. 21 C.F.R. § 201.327(e)(4).

deception because false statements cannot be cured by less prominent explanations, but this argument once again relies on inapposite caselaw involving ***affirmative misstatements***. As the cases cited by defendant in its opening brief make clear, although an ***unambiguous*** misstatement on the front of a product cannot be cured with additional and contradictory disclosures elsewhere on the packaging, a manufacturer can lawfully explain the meaning of potentially ***ambiguous*** labeling with other clarifying disclosures.

***Third***, plaintiff also argues that his single conclusory reference to a survey further supports his theory of deception because Judge Cogan supposedly credited similar allegations regarding a survey in a case involving soda. But the court's ruling in that case – which involved the bolded statement "MADE WITH AGED VANILLA" – turned on the plausibility of the plaintiffs' allegations, and the court only addressed the survey in passing. Here, plaintiff cannot point to any objective misrepresentation on the Chapstick label; instead, he has sought to manufacture a misrepresentation through a distorted survey. Moreover, the Court ***has*** the benefit of having seen the actual survey, which only showed consumers part of the packaging and then asked them a loaded question. While plaintiff contends that it is improper for a defendant to attack the methodology of a survey in a motion to dismiss, the cases cited by plaintiff merely hold that a plaintiff need not describe the survey's methodology in his pleadings. Here, the details are known, and they show that the survey is ***facially*** self-serving and irrelevant precisely because it did not provide consumers with the totality of the labeling and packaging in question. Plaintiff's cases do not foreclose that pertinent argument, while the authority cited by defendant – which plaintiff fails to even address – squarely validates it.

Finally, plaintiff is unable to refute defendant's argument that his unjust enrichment claim is duplicative of his consumer protection claims and separately fails for this independent

reason. Although plaintiff cites a single outlier case that rejected this argument in another case, even his other authority recognizes that an unjust enrichment claim cannot simply restate a plaintiff's consumer protection causes of action.

For all of these reasons, discussed in greater detail below, the Court should reject plaintiff's arguments and dismiss this case with prejudice.

## ARGUMENT

I. **ALL OF MR. ENGRAM'S CLAIMS FAIL BECAUSE HE DOES NOT PLAUSIBLY ALLEGE THAT HE WAS MISLED.**

   A. **The Front Of The ChapStick Moisturizer Packaging Does Not Represent That It Provides Eight Hours Of SPF Protection.**

As set forth in defendant's opening brief, plaintiff's theory of deception fails first and foremost because the front of the labeling does not misrepresent the duration of SPF 15 sun protection. (*See* Def.'s Mem. at 5-6.) Plaintiff urges the Court to reject this argument in light of *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018) (Pl.'s Opp'n at 6), but the "core allegation" in *Mantikas* was that the statements "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" were misleading because they falsely implied that the crackers in question were made primarily or entirely of whole grain when, in fact, they consisted mostly of enriched white flour, 910 F.3d at 637. As the Court of Appeals further explained, while the front of the box also displayed the "*amount*" of whole grain in the crackers per serving, those disclosures were "nonetheless misleading because they falsely imply that the grain content is entirely or at least predominantly whole grain, whereas in fact, the grain component consisting of enriched white flour substantially exceeds the whole grain portion." *Id.*

This case is nothing like *Mantikas* because plaintiff is unable to identify a single affirmative misstatement – much less a prominent misstatement like the "bold" "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" "assertions" at issue in that case. Instead, he is

forced to rely on the *close proximity* of entirely separate representations regarding the distinct moisturizing and sun protection capabilities of ChapStick Moisturizer, two of which (i.e., "SKIN PROTECTANT|SUNSCREEN") do not mention the duration of either the moisturizing or sun protectant attribute of the product. And although plaintiff relies on supposed "'8 HOUR MOISTURE/SPF15'" statements, *those are two different representations*. Indeed, as the photograph included in plaintiff's own brief illustrates, the "8 Hour Moisture" statement is in white lettering and is included in a blue semicircle, while the "SPF 15" representation is in blue lettering and is located in a gray and white semicircle. (*See* Pl.'s Opp'n at 1.)

Plaintiff also relies on *Sharpe v. A&W Concentrate Co.*, No. 19-cv-768 (BMC), 2020 WL 4931045 (E.D.N.Y. Aug. 23, 2020) (cited in Pl.'s Opp'n at 6), but that case – which involved *affirmative* misrepresentations on the front of soda bottles – is even further afield. There, the court "h[e]ld that plaintiffs ha[d] plausibly alleged that the 'MADE WITH AGED VANILLA' representation – prominently displayed underneath the A&W logo and on [the] front of the bottle or box, *bolded and in all capital letters* – falsely implie[d] that any vanilla content derives predominantly from the vanilla plant, instead of its artificial and synthetic counterpart." *Id.* at *5 (emphasis added). In so holding, the court noted that the facts in *Sharpe* "present[ed] a *stronger* case of misrepresentation than in *Mantikas*" because in *Mantikas*, "the disputed ingredient, whole grain, was at least present in a discernible quantity (5 to 8 grams out of a serving size of 29 grams)," whereas in *Sharpe*, the plaintiffs alleged that the desired ingredient was "entirely absent or, alternatively, *de minimis* in quantity when compared to the artificial synthetic substitute for vanilla." *Id.*

Here, in contrast to both *Mantikas* and *Sharpe*, plaintiff does not allege that ChapStick Moisturizer fails to provide *any* moisture or SPF protection, or that such benefits are provided in

4

*de minimis* amounts. Nor does he allege that the product fails to provide **eight hours of moisture**, which is the only duration-related claim made on the front of the product packaging. Although Mr. Engram nonetheless argues that the close proximity of "8 HOUR MOISTURE" and "SPF 15" somehow implies that the sun protection *also* lasts for an entire day, neither *Mantikas* nor *Sharpe* supports liability based on this attenuated allegation.

B. <u>Any Confusion Regarding The SPF 15 Representation Is Clarified By Multiple Disclosures On The Back Of The Packaging.</u>

As set forth in defendant's opening brief, even if the meaning of the SPF 15 representation were remotely ambiguous, any risk of confusion would be negated by the explicit and straightforward "**Directions**" on the back of the packaging indicating that a single application provides "2 hours" of SPF 15 sun protection. (*See* Def.'s Mem. at 7-10.) Plaintiff now contends that not all ChapStick Moisturizer sold during the "entirety of the class period" came in the blister packaging that includes the directions for use. (Pl.'s Opp'n at 7.) But plaintiff does not claim that he purchased ChapStick Moisturizer sold as a single tube, and "at the motion to dismiss stage, the Court only considers allegations pertaining to the named plaintiff." *See Kamath v. Robert Bosch LLC*, No. 2:13-cv-08540-CAS(JCGx), 2014 WL 2916570, at *5 n.4 (C.D. Cal. June 26, 2014).

Plaintiff also contends that "the Second Circuit's decision in *Mantikas* forecloses [defendant's] argument" that the package should be considered in its totality. (Pl.'s Opp'n at 7.) As explained in the opening brief, however, *Mantikas* merely holds that a back-of-the-box disclaimer cannot "correct" or "contradict" **unambiguously** "misleading information set forth in large bold type" – for example, that crackers are "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN." 910 F.3d at 637. Thus, cases since *Mantikas* continue to recognize that "clarification can defeat the [plaintiff's] claim" if the front of a package contains an ambiguous

5

representation, even though such a clarification would not suffice to correct an unambiguously misleading representation. *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, No. 18-CV-2250 (NGG) (RML), 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) (citation omitted) (cited in Def.'s Mem. at 9); *see also Sarr v. BEF Foods, Inc.*, No. 18-cv-6409 (ARR) (RLM), 2020 WL 729883, at *3, *4-5 (E.D.N.Y. Feb. 13, 2020) (similar).

Notably, plaintiff does not address any of these authorities in his opposition brief. Instead, he cites two cases purportedly supporting the proposition that "consumers need not turn a box, a bottle, or the blister pack to clarify any ambiguity" created by the front. (Pl.'s Opp'n at 8 (citing *Sharpe*, 2020 WL 4931045, at *5; *Comfort v. Ricola USA, Inc.*, No. 19-CV-06089 CJS, 2019 WL 6050301, at *4 (W.D.N.Y. Nov. 14, 2019)).) But *Sharpe* is inapposite because that case involved a "bolded" ***affirmative*** misstatement "in all capital letters" that the beverages were "MADE WITH AGED VANILLA." 2020 WL 4931045, at *5. In other words, just as in *Mantikas*, the misrepresentation in question was ***unambiguous***, and the manufacturer could not "correct" a prominent misstatement with a contradictory disclaimer on the back of the box. *Id.* Similarly, in *Comfort*, the court rejected the defendant cough drop manufacturer's reliance on "additional labeling on the sides or back" of the packaging only after finding that the statement on the front (i.e., "Naturally Soothing") was unambiguous. 2019 WL 6050301, at *3-4.

In addition, the so-called disclaimer in *Sharpe* was not even capable of contradicting the specific misstatement at issue because "the existence of ethyl vanillin, the substance plaintiffs allege[d] [was] exponentially present compared to natural vanilla, [was] ***never explicitly disclosed to consumers***." 2020 WL 4931045, at *5 (emphasis added). "Therefore, by looking at the products' Nutrition Facts, plaintiffs could not even confirm the presence of ethyl vanillin in the beverages." *Id.* As the court further explained, while the back of the packaging also

6

contained the statement "Natural and Artificially Flavored," "[a] consumer . . . does not know if this is referring to vanilla or to the host of other ingredients present in the drinks, including the root beer or cream soda flavoring." *Id.* Here, by contrast, the "**Directions**" section of the "Drug Facts" panel explicitly confirms that the SPF 15 benefit does ***not*** last 8 hours, instructing users to "apply liberally 15 minutes before sun exposure" and "reapply at least every 2 hours" for sun protection. (Decl. of Jordan M. Schwartz ¶ 3, Aug. 26, 2020 (Ex. 1 to Def.'s Mem.).)

C. <u>**Plaintiff's Reliance On The Survey Is Misplaced.**</u>

Finally, plaintiff argues that his supposed "survey evidence" also "supports his allegations that a reasonable consumer would be misled by the labeling on the Product." (Pl.'s Opp'n at 8.) In so arguing, plaintiff once again relies on *Sharpe*, asserting that the court in that case "found a similar survey 'persuasive extrinsic evidence that the overwhelming percentage of consumers share [plaintiffs'] misconception.'" (*Id.* at 8-9 (quoting *Sharpe*, 2020 WL 4931045, at *5).) But plaintiff significantly overstates the import of the survey in the disposition of *Sharpe*; in fact, the court in that case only addressed the survey in passing, noting that it "bolstered" the court's determination that the "MADE WITH AGED VANILLA" representation was deceptive. *See Sharpe*, 2020 WL 4931045, at *2, *5. Indeed, in denying the defendant's motion for reconsideration, the *Sharpe* court confirmed that, "even without the survey, the [c]ourt would have denied the motion to dismiss." Minute Order, *Sharpe v. A&W Concentrate Co.*, No. 1:19-cv-00768-BMC (E.D.N.Y. filed Sept. 4, 2020).

Moreover, in *Sharpe*, the court did ***not*** have the benefit of reviewing the survey itself, *see Sharpe*, 2020 WL 4931045, at *2, *5, whereas here, plaintiff submitted it in connection with the parties' post-hearing letter briefing.[2] And even a cursory review of plaintiff's survey

---

²     To the extent the *Sharpe* court's cursory discussion of the survey conducted in that case could be construed
*(cont'd)*

7

demonstrates that consumers were asked solely about the *front* of the labeling, without having the opportunity to view information provided on the back of the packaging. (ECF No. 27-1 at 5-6.) Such a survey cannot possibly speak to whether the labeling is deceptive because it omits key information that "the general consuming public would *not* be free to ignore." *Cheslow v. Ghirardelli Chocolate Co.*, No. 19-cv-07467-PJH, 2020 WL 4039365, at *4, *5-6 (N.D. Cal. July 17, 2020) (emphasis added), *appeal filed* (cited in Def.'s Mem. at 11).

Plaintiff responds that "[w]hen consumer survey data is incorporated into a complaint, the [c]ourt must presume its truth on a motion to dismiss, even if a defendant has raised colorable arguments as to the reliability of the survey methodology," quoting *Shalikar v. Asahi Beer U.S.A., Inc.*, No. CV17-02713 JAK (JPRx), 2017 WL 9362139, at *7 (C.D. Cal. 2017). (Pl.'s Opp'n at 9.) But in *Shalikar*, "the court found consumer claims were plausible based on allegations about the 'words, pictures, [and] diagrams' on the product's packaging, and not based on the survey alone." *Becerra v. Dr Pepper/Seven Up, Inc.*, No. 17-cv-05921-WHO, 2018 WL 3995832, at *7 (N.D. Cal. Aug. 21, 2018) (finding that "*Shalikar* does not bear the weight [plaintiff] puts on it" where plaintiff's complaint "lack[ed] . . . other plausible allegations supporting a reasonable inference that Diet Dr Pepper is misleading"), *aff'd*, 945 F.3d 1225 (9th Cir. 2019). Specifically, in *Shalikar*, the plaintiffs alleged that multiple features of the beer's labeling misled consumers into believing that it was brewed in Japan, including the name of the product itself – Asahi – which means "morning sun" in Japanese, as well as other labeling, packaging and advertising features that made reference to Japan and incorporated Japanese characters. 2017 WL 9362139, at *7. Here, by contrast, the Amended Complaint is devoid of

---

as countenancing conclusory survey-related allegations in a complaint under Rule 8, such an approach "cannot meet *Twombly*'s insistence that claims be nudged over the line from conceivable to plausible." *Podpeskar v. Dannon Co.*, No. 16-cv-8478 (KBF), 2017 WL 6001845, at *4 (S.D.N.Y. Dec. 3, 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (cited in Def.'s Mem. at 10-11).

any comparable allegations, relying solely on the *close proximity* of two different representations regarding disparate attributes of ChapStick Moisturizer.

*Shalikar* is also inapposite because the defendant's challenge there centered on the supposed *dearth of allegations* about the survey's "methodology or reliability." 2017 WL 9362139, at *8.[3] Here, regardless of what has been alleged, the Court has seen the survey; thus, its methodology is known and plaintiff cannot deny that it "deprived respondents of relevant information" – namely, the back of the packaging. *Cheslow*, 2020 WL 4039365, at *6. Plaintiff is thus asking the Court to forget what it knows about the survey and pretend that plaintiff never submitted it. This is not required, even on a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[D]etermining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.") (citing *Twombly*, 550 U.S. at 556). For all of these reasons, plaintiff's reference to the survey cannot salvage his implausible claims.

## II. PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS DUPLICATIVE OF HIS CONSUMER PROTECTION CLAIMS.

Finally, as set forth in defendant's opening brief, Mr. Engram's claim for unjust enrichment should also be dismissed because it is redundant of his other substantive causes of action. (*See* Def.'s Mem. at 12.) In response, plaintiff cites a single outlier case that, "*in an abundance of caution*," did not dismiss an unjust enrichment claim as duplicative of GBL §§ 349 and 350 claims. *Warner v. StarKist Co.*, No. 1:18-cv-406 (GLS/ATB), 2019 WL 1332573, at *3 (N.D.N.Y. Mar. 25, 2019) (emphasis added) (cited in Pl.'s Opp'n at 10). But *Warner* is at

---

[3] The same is true of the other two cases cited by plaintiff. *See, e.g.*, *Joseph v. J.M. Smucker Co.*, No. CV 17-8735 FMO (KSx), 2019 WL 1219708, at *3 (C.D. Cal. Mar. 13, 2019) (cited in Pl.'s Opp'n at 9) ("[T]hat the FAC does not incorporate details about the survey's methodology does not disqualify it from the court's consideration . . . ."); *Branca v. Nordstrom, Inc.*, No. 14cv2062-MMA (JMA), 2015 WL 10436858, at *7 (S.D. Cal. Oct. 9, 2015) (cited in Pl.'s Opp'n at 9) (similar).

9

odds with the prevailing approach to unjust enrichment claims in consumer class actions, as laid bare by plaintiff's own other authority, which confirms that a claim for unjust enrichment fails where – as here – it "merely restates her tort claims under the New York General Business law." *Comfort*, 2019 WL 6050301, at *4.[4] In any event, even *Warner* noted the well-established principle that "unjust enrichment is not a catchall cause of action" and "is available only in unusual situations when" a defendant is "guilty of no wrongdoing [but] has received money to which he or she is not entitled." 2019 WL 1332573, at *2-3 (emphasis added) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790-91, 944 N.Y.S.2d 732, 740, 967 N.E.2d 1177, 1185 (2012)). Here, plaintiff's theory of the case necessarily accuses defendant of "wrongdoing" by alleging that defendant "obtained benefits and monies because the Products were ***not as represented***" (Am. Compl. ¶ 50 (emphasis added)), making an unjust enrichment cause of action unavailable as a matter of law, even under *Warner*.[5]

## CONCLUSION

For the foregoing reasons, as well as those set forth in defendant's opening brief, the Court should dismiss the Amended Complaint in its entirety with prejudice.

Dated: September 23, 2020　　　　　　　　Respectfully submitted,

*Of Counsel:*　　　　　　　　　　　　　　By: /s/ Thomas E. Fox
Jessica D. Miller (admitted *pro hac vice*)　　　Thomas E. Fox

---

[4] Plaintiff also appears to cite *Sharpe* as support for this argument (Pl.'s Opp'n at 10), but that court denied the motion to dismiss the GBL and unjust enrichment claims ***solely*** on the ground that the plaintiffs had plausibly alleged deception, *Sharpe*, 2020 WL 4931045, at *7.

[5] Plaintiff also argues that the Federal Rules of Civil Procedure "permit [him] to assert claims in the alternative, regardless of consistency." (Pl.'s Opp'n at 10.) But as discussed above, Mr. Engram is ***not*** pleading his unjust enrichment claim in the alternative; rather, that claim is "a mere regurgitation of" his GBL claims, rendering it "duplicative." *Alce v. Wise Foods, Inc.*, No. 17 Civ. 2402 (NRB), 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018). The cases cited by plaintiff in support of his alternative-pleading argument – two of which did not even involve claims for unjust enrichment – are not to the contrary. *See, e.g.*, *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016) ("[T]he plaintiff is at liberty to plead different theories . . . ."); *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95-96 (2d Cir. 1994) (similar); *St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 184-85 (E.D.N.Y. 2010) (allowing unjust enrichment claim to proceed as an alternative to claim for breach of contract because the parties disputed "whether an enforceable contract exists that governs the subject matter underlying the unjust enrichment claim").

| | |
|---|---|
| Jordan M. Schwartz (admitted *pro hac vice*)<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>1440 New York Avenue, N.W.<br>Washington, D.C. 20005<br>Tel:  (202) 371-7000<br>Fax:  (202) 393-5760<br>E-mail:  Jessica.Miller@skadden.com, Jordan.Schwartz@skadden.com | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>One Manhattan West<br>New York, New York 10001<br>Tel:  (212) 735-2165<br>Fax:  (917) 777-2165<br>E-mail:  Thomas.Fox@skadden.com |

*Attorneys for Defendant GSK Consumer Healthcare Holdings (US) LLC*