```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x
```

CLINTON ENGRAM,

                Plaintiff,         **MEMORANDUM & ORDER**
                                                   19-CV-2886(EK)(PK)

     -against-

GSK CONSUMER HEALTHCARE
HOLDINGS(US)INC.,

                Defendant.

```
-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

        Defendant GSK Consumer Health Holdings markets a lip balm sold under the Chapstick brand name called "2 in 1 Lipcare." The name is a reference to the single product's two functions: moisturizing and sun protection. Plaintiff Clinton Engram alleges that the product's labeling is misleading as to the length of sun protection it provides, and that the label therefore constitutes a "deceptive act or practice" and "false advertising" under New York's General Business Law Sections 349 and 350. Plaintiff also alleges unjust enrichment and indicates his intent to seek class certification. Defendant moves to dismiss under Rule 12(b)(6) for failure to state a claim. I grant Defendant's motion in its entirety, as I conclude that the reasonable consumer would not be misled by the representations at issue.

## I. Background

The Chapstick product at issue is, like many lip balms, sold in a hard plastic tube.  Plaintiff's original complaint alleged that the tube was sold in clear plastic packaging that the parties refer to as a "blister pack."  That outside packaging provided additional space for marketing text and federally mandated drug facts.  The original complaint, filed in May 2019 ("Original Complaint"), ECF No. 1, included three photographs: one showing the front of the plastic packaging; one showing the back of that packaging; and one of the tube itself (just the front side).  These photographs are reproduced below.

As the photographs depict, the front of the package and the front of the tube both contain a circle, bisected horizontally.  In the top half of the circle is the phrase "8 HOUR MOISTURE," written in white letters against a blue background.  In the bottom half, in blue letters on a white and gray background, is the phrase "SPF 15."




Plaintiff does not contest the accuracy of either of these claims — that the product moisturizes for eight hours, or that it contains a sun-protection factor of 15. Instead, he claims that the proximity of these claims to one another would lead the reasonable consumer to conflate them, and as a consequence to misunderstand that the product provides eight hours of sun protection. Indeed, Plaintiff alleges that he personally "relied upon" the product's "representations to belief [sic] that the product he bought would provide 8 hours of SPF 15 protection." First Amended Complaint ("the FAC") ¶ 19, ECF No. 29.

According to Plaintiff, the Defendant's "misrepresentation" — the suggestion that the product contains "8 hour sun protection" — "increases the risk of consumer harm, because it encourages less-frequent and under-application" of the product. *Id.* ¶¶ 6, 8. Additionally, Plaintiff alleges,

3

consumers paid a premium for longer protection than the product delivers. *Id.* ¶ 11.

The back of the packaging sets out "Directions" for using the product. As shown in the photograph below, the user is directed to "apply liberally 15 minutes before sun exposure"; "reapply at least every 2 hours"; and "use a water resistant sunscreen if swimming or sweating." Original Complaint ¶ 4.



At oral argument on Defendant's motion to dismiss the original complaint, the parties and the Court engaged in extended colloquy about the extent to which the "Directions" on

the reverse of the package — specifically the directive to "reapply at least every two hours" — could serve to minimize any alleged confusion emanating from the front of the package. Following oral argument, the Court granted Plaintiff's motion to amend the complaint. The FAC, submitted thereafter, simply deleted the images of the blister packaging, including the image of the reverse of the package and any reference thereto. Thus, the FAC — now the operative complaint — displays only the single photo of the front of the tube.[1]

The FAC also added an allegation that "a survey conducted in May of 2020" — *i.e.*, after oral argument — "by a neutral third party of 402 consumers" showed that "259 of them (64.4%) believed that the Product provided 8 hours of sun protection based on the packaging." FAC ¶ 5. Plaintiff attached the survey (which was titled "Report for Project — 031520-1 ChapStick Study") to a letter filed with the Court on May 22, 2020. Pl.'s Ltr. dated May 22, 2020, ECF No. 27. The filings do not indicate who conducted the survey (apart from calling them "neutral"). The survey indicates, on its face, that the respondents were shown a picture of the front of the Chapstick tube, but not the full package — including the reverse of the

---

[1] For reasons discussed in Part II below, I consider all three images of the package in question, despite the deletion. *See, e.g.*, *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493, 2020 WL 6323775, at *3 n.5 (S.D.N.Y. Oct. 27, 2020).

5

package, where the direction to "reapply at least every 2 hours" appears. *See id.* Ex. A, ECF No. 27-1 (survey attachment).

## II. Discussion

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the court's task is to assess the legal feasibility of the complaint." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). In doing so, the Court "must take the facts alleged in the complaint as true, drawing all reasonable inferences in [the plaintiff's] favor." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2] Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**A.   New York General Business Law Sections 349 and 350**

New York GBL Section 349 prohibits "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service." *See* N.Y. Gen. Bus. Law § 349(a). A "deceptive act[]" or practice is one that is

---

[2] Unless otherwise noted, when quoting judicial decisions this order omits all alterations, citations, footnotes, and internal quotation marks.

6

"likely to mislead a reasonable consumer acting reasonably under the circumstances." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 350. The term "false advertising" means "advertising, including labeling . . . if such advertising is misleading in a material respect." *Id.* § 350-a(1). Both provisions permit "any person who has been injured by reason of any violation" thereof to bring an action to enjoin such unlawful act or practice, an action to recover damages, or both. *Id.* §§ 349(h), 350-e(3).

To state a claim under Section 349 or 350, a plaintiff must allege that (1) the defendant engaged in consumer-oriented conduct; (2) the conduct was misleading in a material way; and (3) plaintiff was injured as a result of the allegedly deceptive act or practice. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). The standards under Sections 349 and 350 are "substantively identical." *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007).

The test, at the second element, is an objective one: the challenged conduct "must be materially deceptive or misleading to a reasonable consumer acting reasonably under the circumstances." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017) (quoting *Dash v. Seagate Tech. (U.S.)*

7

*Holdings, Inc.*, 27 F. Supp. 3d 357, 360 (E.D.N.Y. 2014)). The Court may resolve this question on a motion to dismiss: "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (citing cases).

1. Is Context Still Relevant?

The Second Circuit has observed that in deceptive marketing cases, "context is crucial." *Id*. at 742; *see also Wurtzburger v. Ky. Fried Chicken*, No. 16-CV-08186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) ("Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole.").

Some context, however, has tended to matter more than other context. Where the front of a package makes a bold and blatant misstatement about a key element of a product, there is little chance that clarification or context on the reverse of the package will suffice to overcome a deception claim (especially at the motion-to-dismiss stage). *E.g.*, *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018). But when the front of the package is better characterized as ambiguous than misleading, courts looking at the alleged misrepresentations in their full context and are more likely to grant a motion to dismiss. *See, e.g.*, *Nelson*, 246 F. Supp. at 674.

In *Mantikas*, for example, the front of a Cheez-Its box trumpeted that the crackers were "made with whole grain," when in fact the product's primary grain content was enriched white flour. 910 F.3d at 637.[3] The Court of Appeals held that the "whole grain" claims were "misleading because they falsely imply that the grain content is entirely or at least predominantly whole grain." *Id.* In light of this misleading construction on the front of the package, *Mantikas* held, consumers should not be required to turn to the ingredients section of the package, note the number of grams in a single serving, and do their own calculations to ascertain the proportion of white flour to whole grain.[4]

In other cases, context was sufficient to overcome some identified *ambiguity* — as opposed to outright falsehood — on the front of the package. *See, e.g.*, *Nelson*, 246 F. Supp. 3d at 675-76 (reasonable consumer would not be misled into

---

[3] There were multiple packages challenged in that case; some portion of the Cheez-Its boxes at issue used the simpler phrase "Whole Grain," *see id.* at 634, which could be read as a stronger — and thus more misleading — claim than the "made with" construction.

[4] The *Mantikas* opinion cited a Ninth Circuit case for the proposition that "reasonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)). It was significant in *Mantikas* that the misleading claims were directed at what consumers would understand to be the primary ingredient in the product — the crux of the bargain, in other words. *See id.* at 638 ("[R]easonable consumers are likely to understand that crackers are typically made predominantly of grain. They look to the bold assertions on the packaging to discern what *type* of grain.").

9

believing beer was produced in Australia based on images of a kangaroo, the Southern Cross constellation, and the company's website (which touted its historic roots in Australia), where the packaging also contained a clear statement that the beer was made in Georgia and Texas); *Davis v. Hain Celestial Grp., Inc*, 297 F. Supp. 3d 327, 335 (E.D.N.Y. 2018) (reasonable consumer would not be misled where the "label taken as a whole" made contested fact clear).

Plaintiff contends that *Mantikas* compels the denial of the instant motion to dismiss. Plaintiff's counsel went so far as to contend, at oral argument, that the "context matters" directive, which runs so strongly through the consumer-deception cases of this Circuit, does not survive *Mantikas* — *i.e.*, that context or clarification on the packaging may no longer be considered. In a post-oral argument, supplemental letter, Plaintiff contends that even if I were to conclude that the front of the Chapstick packaging is ambiguous, at most, *Mantikas* would still preclude any consideration of the "context" provided by the reverse of the Chapstick package. Pl.'s Ltr. dated May 22, 2020 at 2.

This is not a correct statement of the law. The Second Circuit, post-*Mantikas*, continues to consider context in "determining whether a reasonable consumer would have been misled by a particular advertisement." *Fink*, 714 F.3d at 742.

In *Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020), the Plaintiff contended that the reasonable consumer would be misled by the name "Florida's Natural" to conclude that the product contained no artificial ingredients. The Second Circuit upheld the district court's dismissal of the complaint, writing that "the district court properly *analyzed the Florida's Natural packaging as a whole* in analyzing whether it was potentially deceptive or misleading, determining that no reasonable consumer would be misled into believing that Defendant's products did not contain any trace amounts of glyphosate." *Id.* at 705 (emphasis added). The Court of Appeals went on to quote *Fink*, 714 F.3d at 742, for the familiar proposition that "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Id.* Clearly, context continues to matter.[5]

The better reading of *Mantikas* and these other cases is that the extent to which context matters will necessarily

---

[5] Multiple district court opinions that post-date *Mantikas* have invoked clarifying context. *E.g.*, *Wallace v. Wise Foods, Inc.*, No. 20-CV-6831, 2021 WL 3163599, at *2 (S.D.N.Y. July 26, 2021) (question of whether packaging is materially misleading "revolves around the context in which [the challenged] representations were made, including 'the presence of a disclaimer or similar clarifying language'") (quoting *Fink*, 714 F.3d at 742); *Kennedy v. Mondelēz Global LLC*, No. 19-CV-302, 2020 WL 4006197, at *11 (E.D.N.Y. July 10, 2020) (Bulsara, M.J.) (recommending dismissal where "Mondelez's products state that there are '8g of whole grain per 31g serving.' This disclosure remedies any ambiguity about how much whole grain is in the product per serving."); *cf. Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 102-04 (E.D.N.Y. 2020) (ambiguous qualifying language on the back could not cure affirmative misrepresentation on the front).

depend on the nature of the statements that such context is invoked to clarify. There is a spectrum of advertising claims from factual claims that are absolutely true, at the one end, to (moving along the spectrum) ambiguous claims, to misleading claims, to claims that are outright false — and everything in between. I read *Mantikas* to address the latter end of that spectrum: specifically, to say that contextual information on the reverse of a product's packaging cannot overcome bold and blatant misstatements on the front.

Thus, I proceed to consider the context of the Chapstick package. In doing so, I consider the reverse of the packaging — where the directive to "reapply at least every two hours" appears — despite the fact that Plaintiff deleted it from the FAC. "When allegations in the original complaint are inconsistent with allegations made in the amended complaint, courts are authorized to accept the facts described in the original complaint as true." *Pichardo*, 2020 WL 6323775, at *3 n.5. A Plaintiff may not use "artful pleading" to exclude matters of which "they had notice and which were integral to their claim — and that they apparently most wanted to avoid." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991). This is especially true where, as here, the Plaintiff deleted the "context" at issue from its complaint after the import of that context became apparent at oral

argument. This exception to the traditional rule about matters beyond the operative pleadings "thus prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *see also Cortec*, 949 F.2d at 48 ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

    2.    Would the Reasonable Consumer Likely Be Misled by the Chapstick Package?

So we turn to an assessment of whether Plaintiff has plausibly alleged that the face of the Chapstick package is misleading, and the extent to which the "Directions" box on the back of the package may provide clarification, should clarification be needed. As noted above, Plaintiff makes no claim that either of the two statements on the front of the package is false — neither that the product fails to provide eight hours' worth of moisture, nor that the product's SPF is not 15. Instead, he claims that, taken together, they provide the misleading impression that the product provides eight hours of sun protection. *See* FAC ¶ 4 ("The emphasis on . . . 8 Hour

13

Moisture/SPF 15 causes consumers to expect the Product provides extended wear protection (8 hours) from the sun.").

Plaintiff's argument is flimsy even solely by reference to the front of the packaging, without resorting to the Directions on the reverse for clarification. From the front of the package itself, it is plain that the Defendant is emphasizing the moisturizing properties of the product. The word "moisturizer" appears in all capital letters in a large font on both the package and the tube itself. To provide more information about the product's moisturizing capabilities, both the tube and the cardboard packaging contain a blue semicircle with white lettering that reads "8 HOUR MOISTURE." Below that, the package provides further information on the product's sun-protective properties, with a distinct gray and white semicircle that contains blue lettering reading "SPF 15."

Simply put, the claim that the "8 Hour Moisture" label is likely to mislead consumers about sun protection is inconsistent with the face of the package, and with common sense. The package makes no durational claim about the SPF protection on the front of the package at all. At most, the proximity of the "8 Hour Moisture" claim to the SPF figure creates a potential ambiguity, and as discussed above, the case law permits the Court to resolve ambiguity — as opposed to misleading statements — by reference to the more specific

14

statements on the back of the package.  Those specific statements put any ambiguity to rest, directing the consumer to "apply [the product] liberally 15 minutes before sun exposure," and to "reapply at least every 2 hours."

In this regard, the clarification serves the same purpose as the ones held to make the difference in *Nelson* and *Davis*, among others cited above — cases in which the district courts granted motions to dismiss on the basis that the reasonable consumer would not be misled.  Contrary to Plaintiff's contention, it is not too much to expect a reasonable consumer to review the directions on an SPF product for information on how often to reapply it — particularly where, as here, a similar set of directions is present on all sunscreen products pursuant to FDA regulations.  Just as "[c]onsumers are accustomed to seeing a product's ingredients listed by weight under the nutrition facts," *Davis*, 297 F. Supp. 3d at 337, so too are consumers accustomed to seeing the FDA-mandated "Directions" on the back of an over-the-counter product.  *See* 21 CFR § 201.327(e); *see also Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 312 (S.D.N.Y. 2017), *aff'd sub nom. Kommer v. Bayer Consumer Health*, 710 F. App'x 43 (2d Cir. 2018) (rejecting plaintiff's position because the assumption "that a reasonable consumer might ignore the evidence plainly before him attributes

to consumers a level of stupidity that the Court cannot countenance and that is not actionable under G.B.L. § 349.").

It also bears noting that the Chapstick tube and packaging both provide limited space on which to advertise the product and publish the required Directions. *See Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, No. 17-CV-1613, 2020 WL 816135, at *7 n.2 (C.D. Cal. Jan. 23, 2020) (noting that a court assessing the sufficiency of disclosures should consider how much room there is on the product to provide disclosures). In other words, the Defendant's ability to separate the moisture and SPF claims is limited by the amount of packaging real estate available. This limit makes the presence of a clear disclaimer on the reverse all the more salient.

Nor does the new allegation concerning Plaintiff's survey save the complaint. Even construing the survey in the light most favorable to Plaintiff, the key question was phrased so as to put respondents in an untenable position. That question asked: "Viewing the packaging above, how many of hours of SPF 15 sun protection do you think the product provides?" Pl.'s Ltr. dated May 22, 2020, Ex. A (survey attachment). The "packaging above" showed only the front of the package, which does not contain *any answer* to the question posed. The survey did not expose respondents to the package directions that dictate reapplication "at least" every two hours. Thus, when

16

64.4% of respondents answered "eight hours," they were differently situated from the "reasonable consumer."  *See Cheslow v. Ghirardelli Chocolate Co*., 472 F. Supp. 3d 686, 692-95 (N.D. Cal. 2020) (consumer survey showing that 92% of respondents supported their interpretation of the labeling did not "salvage" previously dismissed claims because it "omitt[ed] the back panel, . . . depriv[ing] respondents of relevant information").

In *Pichardo*, *supra*, the court granted a motion to dismiss despite similar survey allegations.  Like here, the *Pichardo* survey posed a somewhat different question from the dispositive question in the case: Judge Caproni noted that "the survey itself, however, shows that over 70% of the respondents believed the vanilla taste came from vanilla plants; 70% did not say that they believed the vanilla taste came *only* from vanilla plants."  *Pichardo*, 2020 WL 6323775, at *4.  She continued: "Plaintiffs constructed the survey.  If they wanted to ascertain whether respondents thought the flavor came 100% from the vanilla plant, that would have been easy enough to draft."  *Id.* at *4 n.7; *see also Axon*, 813 F. App'x at 704 (affirming dismissal of GBL Section 349 and 350 claims and denial of leave to amend because "the conclusions that [plaintiff] asserts based

on the survey [attached to the proposed amended complaint] are not supported by it").[6]

Plaintiff fails to state a claim under New York GBL Sections 349 and 350. Defendant's motion to dismiss these causes of action is granted.

**B. Unjust Enrichment**

Plaintiff brings a claim for unjust enrichment based on the same allegations as his other causes of action, and the related allegation that "Defendant obtained benefits and monies because the Products were not as represented and expected . . . ." FAC ¶ 50. To prevail on a claim for unjust enrichment in New York, a plaintiff must establish: "(1) defendant was enriched, (2) the enrichment was at the plaintiff's expense and (3) the circumstances were such that equity and good conscience require defendant to make restitution." *Violette v. Armonk Assocs., L.P.*, 872 F. Supp. 1279, 1282 (S.D.N.Y. 1995). "New York law does not allow claims for unjust enrichment to serve as catchall causes of action to be used when others fail." *Nelson*, 246 F. Supp. 3d at 679.

---

[6] In his brief, Plaintiff contends that the products at issue may have been sold without the blister pack surrounding the tube. Pl.'s Mem. in Opp. at 7, ECF No. 35. This allegation is not contained anywhere in the complaint (either one), and is therefore disregarded for purposes of this analysis. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (district courts are "justified in brushing aside further arguments not alleged in [the] complaint but raised for the first time in opposition to summary judgment"). Indeed, the survey itself includes the blister packaging, as opposed to depicting only the tube.

18

Although Plaintiff may plead unjust enrichment in the alternative to his other claims, "claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Id*. Here, the unjust enrichment claim is sufficiently duplicative that it cannot remedy the defects in the GBL claims. Without a plausible false-advertising allegation, Plaintiff fails to allege that equity and good conscience require Defendant to make restitution. Accordingly, Defendant's motion to dismiss this cause of action is granted.

### III. Conclusion

For the aforementioned reasons, Defendant's motion to dismiss is granted as to all causes of action. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: September 30, 2021
        Brooklyn, New York